ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 19 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>IMPERIAL SUGAR COMPANY, IMPERIAL DISTRIBUTING, INC., SAVANNAH FOODS INDUSTRIAL, INC., IMPERIAL-SAVANNAH, LP, BIOMASS CORPORATION, SAVANNAH MOLASSES & SPECIALTIES COMPANY, SAVANNAH FOODS & INDUSTRIES, INC., SAVANNAH SUGAR REFINING CORPORATION, and ST. PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. _____<br><br>**1:11-CV-2778** |

## COMPLAINT FOR ACCOUNTING AND DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff American Guarantee and Liability Insurance Company files this Complaint for Accounting and Declaratory Judgment, showing as follows:

## PARTIES

1.  Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") is a New York corporation with its principal place of business in Schaumburg, Illinois. It is authorized to do business in the State of Georgia.

2.  Defendant Imperial Sugar Company ("ISC") is a Texas corporation with its principal place of business in Sugar Land, Texas. ISC conducts business in the State of Georgia. ISC is a parent company of Defendant Imperial-Savannah, LP, which operates a sugar refinery in Port Wentworth, Georgia.

3.  Defendant Imperial Distributing, Inc. ("IDI") is a Delaware corporation with its principal place of business in Sugar Land, Texas. IDI is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361. IDI is a subsidiary of ISC.

4.  Defendant Savannah Foods & Industries, Inc. ("SF&I") is a Delaware corporation with its principal place of business in Sugar Land, Texas. SF&I is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361. SFI is a subsidiary of ISC.

5.      Defendant Savannah Foods Industrial, Inc. ("SFI") is a Delaware Corporation with its principal place of business in Sugar Land, Texas.  SFI is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation System/Shakinah Edwards, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361.  SFI is a subsidiary of SF&I.

6.      Defendant Savannah Sugar Refining Corporation ("SSRC") is a Georgia corporation with its principal place of business in Sugar Land, Texas.  SSRC is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361.  SSRC is a subsidiary of SF&I.

7.      Defendant Biomass Corporation ("Biomass") is a Delaware corporation with its principal place of business in Sugar Land, Texas.  Biomass is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation System, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361.  Biomass is a subsidiary of SF&I.

8.      Defendant Savannah Molasses & Specialties Company ("SMSC") is a Delaware corporation with its principal place of business in Sugar Land, Texas.  SMSC is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation

System/Shakinah Edwards, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361.  SMSC is a subsidiary of SF&I.

9.      Defendant Imperial-Savannah, LP ("ISLP") is a Delaware corporation with its principal place of business in Sugar Land, Texas.  ISLP is registered to conduct business in Georgia and can be served with process through its registered agent, C T Corporation System/Shakinah Edwards, at 1201 Peachtree Street, NE, Atlanta, Georgia, 30361.  ISLP is a Limited Partnership consisting of SMSC and Biomass.

10.     Defendants ISC, IDI, SFI, ISLP, Biomass, SMSC, SF&I, and SSRC are referred to collectively herein as "Imperial."

11.     Defendant St. Paul Fire & Marine Insurance Company ("St. Paul") is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  It is authorized to do business in the State of Georgia.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over the Defendants because each has purposefully availed itself of the privilege of conducting business within the State of Georgia.

13.     This Court has subject matter jurisdiction over this action. There is complete diversity between AGLIC, Imperial, and St. Paul.   The amount in

controversy exceeds $75,000.   Subject matter jurisdiction is proper as provided by 28 U.S.C. § 1332.

14.   Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, because some of the corporate defendants maintain their registered offices in Fulton County.

## FACTUAL BACKGROUND

### Underlying Claims

15.   On February 8, 2008, an explosion occurred at the Imperial sugar refinery operating in Port Wentworth, Georgia.

16.   At least 70 individuals have filed suit against some or all of the Imperial entities in the Superior Court of Fulton County and the State Court of Chatham County seeking to recover for bodily injury, death, and other harm. These suits are referred to collectively herein as the "Underlying Claims."

### Imperial's Insurance Coverage

17.   Imperial maintained a tower of insurance coverage that includes the following policies:

a) Workers Compensation and Employers Liability, Policy No. 292-13-29, issued by New Hampshire Insurance Company ("NHIC") ("WC/Employers Liability Policy") (Exhibit "A" hereto).  The Workers

Compensation coverage part has no limit of liability.   The employers liability coverage part has a $1,000,000 limit of liability.

b) Primary Commercial General Liability, Policy No. 583-61-28, issued by American Home Assurance Company ("American Home") ("Primary CGL Policy) (Exhibit "B" hereto).    The Primary CGL Policy contains a $1,000,000 per occurrence limit of liability.

c) Commercial Umbrella Liability, Policy No. 9834743, issued by Illinois National Insurance Company ("Illinois National") (the "Umbrella Policy") (Exhibit "C" hereto).   The Umbrella Policy contains a $25,000,000 per occurrence limit of liability and responds upon the exhaustion of the limits of the Primary CGL Policy as well as any other available insurance coverage.

d) Excess Liability Policy No. US00006399L107A, issued by XL Insurance American, Inc. ("XL") (the "XL Excess Policy") (Exhibit "D" hereto). The XL Excess Policy is excess to the Umbrella Policy.   The XL Excess Policy contains a $25,000,000 per occurrence limit of liability, and responds upon the exhaustion of the limits of the Primary Policy and the Umbrella Policy and any other available insurance coverage.

e) The final layer of insurance is a $50,000,000 excess layer shared equally by two policies: (1) Excess Liability, Policy No. AEC9303575 05, issued by Plaintiff AGLIC (the "AGLIC Excess Policy") (Exhibit "E" hereto); and (2) Excess Liability, Policy No. QI04200233, issued by St. Paul Fire & Marine Insurance Company ("St. Paul Excess Policy") (Exhibit "F" hereto). Both the AGLIC Excess Policy and the St. Paul Excess Policy (collectively the "Second Excess Policies") contain a $25,000,000 part of $50,000,000 per occurrence limit of liability; and are triggered upon the exhaustion of the limits of the Primary Policy, the Umbrella Policy, and the XL Excess Policy as well as any other available insurance coverage.

18. NHIC, American Home, and Illinois National are subsidiaries of American International Group, Inc. ("AIG"), and are referred to collectively herein as the "AIG Companies."

19. Each of the Imperial entities are insureds under the policies identified above.

**Imperial's Defense and Settlement of the Underlying Claims**

20. American Home and/or Illinois National has provided a defense to the Imperial entities in the Underlying Claims. Illinois National began defending Imperial under the Umbrella Policy before the limit of American Home's Primary CGL Policy was exhausted.

21.   Imperial has agreed to settle a number of these Underlying Claims.

22.   The settlements resolve all claims against Imperial, including both workers'
compensation claims and liability claims.  Imperial's obligations for the
claimants' workers' compensation claims are certain, as they are based on
statutory liability under workers' compensation laws.  Imperial's obligations
for the liability claims are contingent, as they are based in tort and
potentially subject to various defenses that Imperial has asserted.

23.   Of the claims settled, both workers' compensation claims and liability
claims are resolved by the same settlement.  The settlements are allocated
between Imperial's workers' compensation coverage and its liability
coverage.

24.   AGLIC has been informed that Imperial (or the AIG Companies, acting with
Imperial's consent, and approval) have arbitrarily allocated over 90% of
settlement payments to the liability claims and less than 10% of settlement
payments to the workers' compensation claims.

25.   AGLIC has requested from Imperial, but has not received, information
supporting and explaining the allocation of the settlements.

26.   AGLIC is unable to ascertain whether the allocations are reasonable, and is
in need of guidance from this Court as to their future course of action.

**Imperial's Asserted Right to a Defense under the AGLIC Excess Policy**

27.   Imperial asserted that the AGLIC Excess Policy and the St. Paul Excess Policy each provide a duty to defend Imperial in the Underlying Claims.

28.   The AGLIC Excess Policy does not contain a duty to defend.

29.   Imperial has asserted that the Underlying Insurance, including the XL Policy, provides for the payment of Imperial's defense costs.

30.   Imperial and the AIG Companies have claimed that the limits of the Primary CGL Policy and the Umbrella Policy have been exhausted through the payment of settlements.

**COUNT ONE: Declaratory Judgment on the Duty to Defend**

31.   AGLIC hereby incorporates all allegations in Paragraphs 1-30 above.

32.   Imperial has asserted that it is entitled to a defense and/or payment of defense costs under the AGLIC Excess Policy upon exhaustion of the Underlying Insurance.

33.   Imperial has notified AGLIC of settlement demands from various claimants in the Underlying Claims that, together with the amounts allegedly already paid by Underlying Insurance, could exceed the limits of the Underlying Insurance, creating an imminent dispute among the parties upon Imperial's assertion that all Underlying Insurance has been exhausted and that AGLIC is obligated to defend in the Underlying Claims.

34.     According to the terms of the AGLIC Excess Policy, AGLIC is not obligated to defend Imperial with respect to any claim or suit, and is not obligated to pay any defense costs incurred by or on behalf of Imperial with respect thereto.

35.     An actual case or controversy presently exists, therefore, between AGLIC on one hand, and Imperial on the other, with respect to the obligations, if any, of AGLIC to defend Imperial and/or pay any of Imperial's defense costs under the policies AGLIC issued to Imperial.   This issue presents a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

36.     AGLIC seeks an order in the form of a declaratory judgment holding that AGLIC is not obligated to defend Imperial or pay any of Imperial's defense costs with respect to the Underlying Claims.

### COUNT TWO: Accounting of Settlement Allocations

37.     AGLIC hereby incorporates all allegations in Paragraphs 1-36 above.

38.     AGLIC seeks an accounting of the settlement payments that allegedly exhaust and impair the Underlying Insurance.

39.   AGLIC has requested from Imperial, but has not received, an explanation (with supporting information and documentation) of the allocation of the settlements between Imperial's liability coverage and its workers' compensation coverage.

40.   Therefore, AGLIC does not have the information necessary to determine whether Imperial's Underlying Insurance has been properly exhausted, creating an imminent dispute among the parties upon Imperial's assertion that all Underlying Insurance has been exhausted and that AGLIC is obligated to fund settlements of Underlying Claims.

41.   Resolution of this matter requires an examination and analysis of the allocation of numerous settlement payments between several insurance policies issued by different insurers.

42.   This matter, therefore, involves accounts and transactions that are complicated and intricate, and resolution of these issues in multiplicity of actions would render a trial difficult, expensive, and unsatisfactory at law.

43.   AGLIC does not have an adequate remedy at law.

44.   Accordingly, AGLIC is entitled to an equitable accounting pursuant to O.C.G.A. § 23-2-70.

45.   AGLIC seeks an order requiring Imperial to provide a complete, detailed, accurate, and equitable accounting of all payments in the resolution of claims for which Imperial contends satisfy the exhaustion of the Underlying Insurance, including sufficient information to determine both the reasonableness of the settlements and the reasonableness of the allocation of payments between the workers' compensation coverage and the liability coverage.

46.   AGLIC reserves all rights under the terms and conditions of its policy and in law and equity, including its right to seek a declaratory judgment as to the extent to which settlements of the Underlying Claims have been improperly allocated among Imperial's workers compensation and general liability coverages, and the extent to which the underlying limits to the AGLIC Excess Policy have been properly exhausted.

WHEREFORE, AGLIC respectfully requests that this Court take jurisdiction over this matter and issue a judgment which:

(A)   declares that AGLIC has no duty to defend Imperial or to pay any of Imperial's defense costs with respect to the Underlying Claims;

(B)   compels an accounting requiring Imperial to provide sufficient information to AGLIC to support the reasonableness of the

settlements, including the reasonableness of the allocations between Imperial's liability coverage and its workers' compensation coverage;

(C)   declares the rights and obligations of St. Paul in relation to the Underlying Claims;  and

(D)   grants such other and further relief that the court deems just and proper.

This __19__ day of __August__, 2011.

_Stephen Berry_

J. Randolph Evans
Georgia Bar No. 252336
revans@mckennalong.com
J. Stephen Berry
Georgia Bar No. 053106
sberry@mckennalong.com
McKENNA LONG & ALDRIDGE, LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265
Telephone: (404) 527-4000
Fax: (404) 527-4198
*Attorneys for American Guarantee and Liability Company*