IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:11-cv-02778-WSD |
| | : | |
| IMPERIAL SUGAR COMPANY, ET AL., | : | |
| | : | |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | |
| | : | |
| Defendant/Cross-Claimant, | : | |
| | : | |
| v. | : | |
| | : | |
| IMPERIAL SUGAR COMPANY, ET AL., | : | |
| | : | |
| Crossclaim Defendants. | : | |

**IMPERIAL DEFENDANTS'ANSWER AND AFFIRMATIVE DEFENSES TO AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY'S COMPLAINT FOR ACCOUNTING AND DELCARATORY JUDGMENT AND IMPERIAL SUGAR COMPANY'S COUNTERCLAIMS AGAINST AMERICAN GUARANTEE & <u>LIABILITY INSURANCE COMPANY</u>**

## <u>ANSWER</u>

Defendants/Counterclaim Plaintiffs Imperial Sugar Company ("Imperial Sugar"), Imperial Distributing, Inc., Savannah Foods Industrial, Inc., Imperial-Savannah, LP, Biomass Corporation, Savannah Molasses & Specialties Company, Savannah Foods & Industries, Inc., and Savannah Sugar Refining Corporation, (collectively, the "Imperial Defendants"), file their Answer and Affirmative Defenses (the "Answer") to Plaintiff American Guarantee & Liability Insurance Company's ("American Guarantee") Complaint for Accounting and Declaratory Judgment (the "Complaint"), responding to each individually numbered paragraph of the Complaint as follows:

## <u>"PARTIES"</u>

1.      Upon information and belief, admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.    Admitted.

10.    No allegations are asserted in Paragraph 10 of the Complaint. Accordingly, no response is required.

11.    Upon information and belief, admitted.

## "JURISDICTION AND VENUE"

12.    Admitted.

13.    Admitted.

14.    The Imperial Defendants admit that certain Imperial Defendants maintain registered agents in Fulton County, Georgia, but deny the remainder of the allegations of paragraph 14 in their entirety.

## "FACTUAL BACKGROUND"

### "Underlying Claims"

15.    The Imperial Defendants admit that an explosion occurred at the Imperial Sugar refinery in Port Wentworth, Georgia on February 7, 2008, but deny the remainder of the allegations of paragraph 15 in their entirety.

16.    The Imperial Defendants admit that, following the refinery explosion on February 7, 2008, certain individuals filed suit against certain Imperial entities and other defendants in the Superior Court of Fulton County and the State Court of Chatham County seeking to recover for bodily injury, death, harm and other

loss as a result of the explosion (the "Port Wentworth Litigation").   The Imperial Defendants deny the remainder of the allegations in paragraph 16 in their entirety.

### "Imperial's Insurance Coverage"

17.    The Imperial Defendants admit that Imperial Sugar maintained insurance coverage for the policy period April 1, 2007 through April 1, 2008.

17.    (a) The Imperial Defendants admit Policy No. 292-13-29 was issued and delivered to Imperial Sugar in Sugar Land, Texas.  Policy No. 292-13-29 speaks for itself as to form and content. To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 17(a).

(b) The Imperial Defendants admit Policy No. 583-61-28 (the "Primary Policy") was issued and delivered to Imperial Sugar in Sugar Land, Texas. Policy No. 583-61-28 speaks for itself in terms of form and content. To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 17(b).

(c) The Imperial Defendants admit Policy No. 9834743 (the "Umbrella Policy") was issued and delivered to Imperial Sugar in Sugar Land, Texas. Policy No. 9834743 speaks for itself in terms of form and content. To the extent

a further response is required, the Imperial Defendants deny each and every allegation of paragraph 17(c).

(d) The Imperial Defendants admit Policy No. 00006399L107A (the "First Excess Policy") was issued and delivered to Imperial Sugar in Sugar Land, Texas. Policy No. 00006399L107A speaks for itself in terms of form and content. To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 17(d).

(e) The Imperial Defendants admit Policy Nos. AEC 9303575 05 (the "American Guarantee Policy") and QI04200233 (the "St. Paul Policy") were issued and delivered to Imperial Sugar in Sugar Land, Texas. The American Guarantee Policy and the St. Paul Policy speak for themselves in terms of form and content. To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 17(e).

18.     Upon information and belief, admitted.

19.     The insurance policies described in paragraph 19 speak for themselves as to form and content. To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 19.

**"Imperial's Defense and Settlement of the Underlying Claims"**

20.    The Imperial Defendants admit that the insurers that issued the Primary Policy and the Umbrella Policy provided a defense and paid all defense costs incurred by the Imperial entities in connection with the Port Wentworth Litigation up until the exhaustion of the Primary Policy and the Umbrella Policy.   The Imperial Defendants deny the remainder of the allegations in paragraph 20 in their entirety.

21.    The Imperial Defendants admit that certain lawsuits comprising the Port Wentworth Litigation have been settled to date.  The Imperial Defendants deny the remainder of the allegations in paragraph 21 in their entirety.

22.    Paragraph 22 asserts legal conclusions to which a response is not required.  To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 22.

23.    Paragraph 23 asserts legal conclusions to which a response is not required.  To the extent a further response is required, the Imperial Defendants deny each and every allegation of paragraph 23.   The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

24.    Denied.   The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

25.    Denied.    The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

26.    Denied.    The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

**"Imperial's Asserted Right to a Defense under the AGLIC Excess Policy"**

27.    The Imperial Defendants admit that Imperial Sugar has asserted that the American Guarantee Policy and the St. Paul Policy both include a duty to pay or reimburse defense fees and costs incurred by or on behalf of Imperial Sugar in connection with the Port Wentworth Litigation. The Imperial Defendants deny the remainder of the allegations in paragraph 27 in their entirety.

28.    The Imperial Defendants contend that the American Guarantee Policy contains a duty to pay or reimburse defense fees and costs incurred by or on behalf of Imperial Sugar in connection with the Port Wentworth Litigation.  The Imperial Defendants deny the remainder of the allegations in paragraph 28 in their entirety.

29.    The Imperial Defendants admit that Imperial Sugar has asserted that the Primary Policy, the Umbrella Policy and the First Excess Policy each provide for the payment or reimbursement of defense fees and costs incurred by or on behalf of Imperial Sugar in connection with the Port Wentworth Litigation.  The

Imperial Defendants deny the remainder of the allegations in paragraph 29 in their entirety.

30.     The Imperial Defendants admit that the limits of the Primary Policy and the Umbrella Policy have each been exhausted in full and that, accordingly, Imperial Sugar contends that the limits of the Primary Policy and the Umbrella Policy have each been exhausted in full.   Upon information and belief, the insurers that issued the Primary Policy and the Umbrella Policy likewise contend that the limits of the Primary Policy and the Umbrella Policy have each been exhausted in full.   The Imperial Defendants deny the remainder of the allegations in paragraph 30 in their entirety.

### **"COUNT ONE: Declaratory Judgment on the Duty to Defend"**

31.     The Imperial Defendants reincorporate and restate here in full all of their responses to paragraphs 1through 30 of the Complaint.

32.     The Imperial Defendants admit that Imperial Sugar has asserted that the American Guarantee Policy includes a duty to pay or reimburse defense fees and costs incurred by or on behalf of Imperial Sugar in connection with the Port Wentworth Litigation.   The Imperial Defendants deny the remainder of the allegations in paragraph 32 in their entirety.

33.    The Imperial Defendants admit that Imperial Sugar has notified American Guarantee of settlement amounts related to the Port Wentworth Litigation that have and/or will exhaust in full the limits of the Primary Policy, the Umbrella Policy and the First Excess Policy.    The Imperial Defendants further admit that there is an imminent dispute between Imperial Sugar and American Guarantee as to whether American Guarantee is obligated to pay or reimburse defense fees and costs incurred by or on behalf of Imperial Sugar in connection with the Port Wentworth Litigation. The Imperial Defendants deny the remainder of the allegations in paragraph 33 in their entirety.

34.    Denied.

35.    Admitted.

36.    The Imperial Defendants deny that American Guarantee is entitled to any of the relief sought in its Complaint, including without limitation the declaratory judgment described in paragraph 36 of the Complaint.    To the extent further response is required, the Imperial Defendants deny all of the allegations of paragraph 36.

## **"COUNT TWO: Accounting of Settlement Allocations"**

37.    The Imperial Defendants reincorporate and restate here in full all of their responses to paragraphs 1 through 36 of the Complaint.

38.    The Imperial Defendants deny that American Guarantee is entitled to any of the relief sought in its Complaint, including without limitation the accounting described in paragraph 38 of the Complaint.  To the extent further response is required, the Imperial Defendants deny all of the allegations of paragraph 38.

39.    Denied.   The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

40.    Denied.

41.    Denied.   The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

42.    Denied.

43.    Denied.

44.    Denied.

45.    The Imperial Defendants deny that American Guarantee is entitled to any of the relief sought in its Complaint, including without limitation the order or accounting described in paragraph 45 of the Complaint.  To the extent further response is required, the Imperial Defendants deny all of the allegations of paragraph 45.   The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

46.    The Imperial Defendants deny that American Guarantee has properly or effectively reserved the rights described in paragraph 46 of the Complaint.  To the extent further response further required, the Imperial Defendants deny all of the allegations of paragraph 46.  The Imperial Defendants expressly deny that any alleged "allocation" of settlement amounts occurred.

The Imperial Defendants deny each and every allegation in the Complaint to the extent not specifically admitted above.

The Imperial Defendants deny that American Guarantee is entitled to any of the relief prayed for in the "WHEREFORE" clause (appearing on pages 12 through 13) of the Complaint.  The Imperial Defendants pray that this Court deny all of the relief requested in Plaintiff's Complaint.

## <u>AFFIRMATIVE DEFENSES</u>

Without admitting or acknowledging that the Imperial Defendants bear the burden of proof as to any of them, the Imperial Defendants assert the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
#### (Failure to State a Claim)

American Guarantee's Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Breach of Contract)

The American Guarantee Policy includes a duty to pay or reimburse defense fees and costs incurred by or on behalf of Imperial Sugar in connection with the Port Wentworth Litigation.   Payment or reimbursement of covered defense costs does not reduce or "erode" the limit of liability provided by the American Guarantee Policy.  American Guarantee's refusal to provide coverage for defense fees and costs constitutes an anticipatory and material breach of contract and/or breach of implied contract.

## THIRD AFFIRMATIVE DEFENSE
### (No Right to Equitable Accounting)

American Guarantee has not established any right, and cannot establish any right, to seek an equitable accounting, under O.C.G.A. § 23-2-70 or otherwise.  Imperial Sugar has already provided American Guarantee with all relevant documents and information within Imperial Sugar's custody and control pertaining to the underlying settlements at issue.  American Guarantee has an adequate remedy or remedies at law and the relief sought by American Guarantee is both futile and prejudicial to Imperial Sugar. Additionally, American Guarantee fails to account for the consideration given by the Imperial

Sugar's workers' compensation insurer in the form of lien releases totaling over $30 million.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

American Guarantee's claims are barred, in whole or in part, by the doctrine of waiver, and by virtue of American Guarantee's acts, omissions, representations, and other conduct which constitute a waiver of any right to claim lack of coverage under the American Guarantee Policy, and a waiver of any right to seek any "accounting" of payments made under any underlying policy of insurance.

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to Timely and Effectively Reserve Rights)

American Guarantee's failure to timely and effectively reserve its rights under the American Guarantee Policy has resulted in a waiver of any right to claim a lack of coverage, and a waiver of any right to seek any "accounting" of payments made under any underlying policy of insurance.

## SIXTH AFFIRMATIVE DEFENSE
### (Estoppel)

American Guarantee's claims are barred, in whole or in part, by the doctrine of estoppel, and by virtue of the acts, agreements, omissions,

representations and other conduct by American Guarantee upon which Imperial Sugar reasonably relied.

## SEVENTH AFFIRMATIVE DEFENSE
### (Laches)

American Guarantee's claims are barred, in whole or in part, by the doctrine of laches.

## EIGHTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

American Guarantee's claims are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE
### (Ratification and Acquiescence)

American Guarantee's claims are barred, in whole or in part, by the doctrines of ratification and acquiescence.

## TENTH AFFIRMATIVE DEFENSE
### (Contributory Negligence)

American Guarantee's claims are barred, in whole or in part, by the doctrine of contributory negligence.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Reservation of Additional Affirmative Defenses)

The Imperial Defendants are presently without sufficient knowledge and information from which to form a belief as to whether one or more of them may

have additional, and as yet unstated, affirmative defenses. As such, the Imperial Defendants reserve the right to assert additional affirmative defenses in the event discovery reveals facts or legal contentions which render such defenses appropriate.

## COUNTERCLAIMS AGAINST PLAINTIFF AMERICAN GUARANTEE

Pursuant to Federal Rule of Civil Procedure 13(a), Imperial Sugar files the following counterclaims (the "Counterclaims") against Plaintiff American Guarantee:

## I. PARTIES

1. Imperial Sugar is, and at all relevant times has been, a corporation organized under the laws of the State of Texas, with its principal place of business located at 8016 Highway 90A, Sugar Land, Texas 77478. Imperial Sugar conducts business in the State of Georgia and operates a sugar refinery in Port Wentworth, Georgia.

2. Plaintiff/Counterclaim Defendant American Guarantee is, and at all relevant times has been, a corporation organized under the laws of the State of New York, with its principal place of business located in Schaumburg, Illinois. American Guarantee is an insurer licensed to do business in the State of Georgia.

3.      Defendant/Cross-Claim Defendant St. Paul is, and at all relevant times has been, a corporation organized under the laws of the State of Connecticut, with its principal place of business located at 385 Washington Street, St. Paul, Minnesota 55102.  St. Paul is authorized to do business in the State of Georgia.

## II.  JURISDICTION AND VENUE

4.      The Court has personal jurisdiction over American Guarantee, a non-resident insurance company, because American Guarantee is authorized to do business in the State of Georgia, and because American Guarantee has consented to and admitted personal jurisdiction by filing its Complaint in this action.

5.      The Court has personal jurisdiction over St. Paul, a non-resident insurance company, because St. Paul is authorized to do business in the State of Georgia, and because St. Paul has admitted personal jurisdiction in its Answer to American Guarantee's Complaint in this action and filed a crossclaim against the Imperial Defendants in this action.

6.      This Court has subject-matter jurisdiction, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Imperial Sugar and all other parties, and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.  FACTUAL BACKGROUND

7.     On February 7, 2008, an explosion occurred at Imperial Sugar's refinery located in Port Wentworth, Georgia.  Since that time, more than forty lawsuits have been filed against Imperial Sugar entities and other defendants alleging bodily injury, death, harm and other loss as a result of the explosion.  All such lawsuits are collectively referred to herein as the "Port Wentworth Litigation."

8.     Imperial Sugar is a named insured under certain primary, umbrella and excess liability insurance policies intended to provide Imperial Sugar and other insureds various layers of liability insurance protection.

9.     Imperial Sugar gave timely notice of the Port Wentworth Litigation to all of its liability insurers, including but not limited to American Guarantee and St. Paul.

10.    Imperial Sugar and American Home Assurance Company (the "Primary Insurer") are parties to a "Commercial General Liability Policy," Policy No. 583-61-28, with a policy period from April 1, 2007 to April 1, 2008 (the "Primary Policy"), whereby the Primary Insurer agreed to insure Imperial Sugar and other insureds against certain liability claims.

11.    The Primary Policy provides for a $1 million limit of liability per occurrence.

12.    The Primary Policy provides for a duty to defend Imperial Sugar and all other insureds in the event of a covered claim.

13.    The Primary Policy provides for a separate and distinct duty to pay for the defense of Imperial Sugar and all other insureds in the event of a covered claim, and provides that defense costs are covered in addition or supplemental to the $1 million limit of liability.

14.    Imperial Sugar and National Union Fire Insurance Company of Pittsburgh, Pa. (the "Umbrella Insurer") are parties to an "Umbrella Prime Commercial Umbrella Liability Policy," Policy No. 9834743, with a policy period from April 1, 2007 to April 1, 2008 (the "Umbrella Policy"), whereby the Umbrella Insurer agreed to insure Imperial Sugar and other insureds against certain liability claims.

15.    The Umbrella Policy provides for a $25 million limit of liability.

16.    The Umbrella Policy provides for a duty to defend Imperial Sugar and all other insureds in the event of a covered claim.

17.    The Umbrella Policy provides for a separate and distinct duty to pay for the defense of Imperial Sugar and all other insureds in the event of a covered claim, and provides that defense costs are covered in addition or supplemental to the $25 million limit of liability.

18.     The next layer of liability insurance for the period of April 1, 2007 to April 1, 2008 is an excess insurance policy provided by XL Insurance America, Inc. (the "First Excess Policy" and the "First Excess Insurer," respectively).

19.     The First Excess Policy is a "follow form" excess liability insurance policy.   In other words, the First Excess Policy has identical terms and conditions as the Umbrella Policy unless the First Excess Policy expressly states otherwise.

20.     The First Excess Policy provides for a $25 million limit of liability.

21.     The final layer of excess liability insurance consists of two separate policies issued by American Guarantee and St. Paul.  By virtue of these two separate polices, American Guarantee and St. Paul each have a 50% participating share in the final $50 million layer of excess liability insurance purchased by Imperial Sugar for the policy period April 1, 2007 to April 1, 2008.

### *The American Guarantee Policy*

22.     American Guarantee issued a "Following Form Excess Insurance Policy" to Imperial Sugar, Policy No. AEC 9303575 05, with a policy period from April 1, 2007 to April 1, 2008 (the "American Guarantee Policy").  Pursuant to the terms of the American Guarantee Policy, American Guarantee agreed to insure

Imperial Sugar and other insureds against excess liability claims that exceed the limits of liability provided by the Umbrella Policy and the First Excess Policy (i.e., $50 million).  Pursuant to the terms to the American Guarantee Policy, American Guarantee insures a 50% participating share in the final $50 million layer of excess liability coverage purchased by Imperial Sugar.  A true and correct copy of the American Guarantee Policy is attached hereto as **Exhibit "A"**.

23.    The American Guarantee Policy is a "follow form" excess liability insurance policy that follows the form of the Umbrella Policy.  As a result, the American Guarantee Policy has identical terms and conditions as the Umbrella Policy unless the American Guarantee Policy expressly states otherwise.

24.    The American Guarantee Policy disclaims the obligation for American Guarantee to "assume charge" of the investigation of any claim or defense of any suit against Imperial Sugar.  However, the American Guarantee Policy does not expressly or impliedly exclude American Guarantee's separate and distinct duty to pay for Imperial Sugar's defense costs in the event of a covered claim.

25.    As a result, the duty arising from the Umbrella Policy to pay for Imperial Sugar's defense of a covered claim is expressly incorporated into and made a

part of the American Guarantee Policy, and thus qualifies as covered loss under the policy.

### The St. Paul Policy

26.    St. Paul issued a "Commercial Excess Liability Protection" policy to Imperial Sugar, Policy No. QI04200233, with a policy period from April 1, 2007 to April 1, 2008 (the "St. Paul Policy").  Pursuant to the terms of the St. Paul Policy, St. Paul agreed to insure Imperial Sugar and other insureds against excess liability claims that exceed the limits of liability provided by the Umbrella Policy and the First Excess Policy.  Pursuant to the terms to the St. Paul Policy, St. Paul insures a 50% participating share in the final $50 million layer of excess liability coverage purchased by Imperial Sugar.  A true and correct copy of the St. Paul Policy is attached hereto as **Exhibit "B"**.

27.    The St. Paul Policy is a "follow form" excess liability insurance policy that follows the form of the First Excess Policy.  As a result, the St. Paul Policy has identical terms and conditions as the First Excess Policy unless the St. Paul Policy expressly states otherwise.  The First Excess Policy, in turn, is a "follow form" policy that follows the form of the Umbrella Policy.  Therefore, the St. Paul Policy has identical terms and conditions as the Umbrella Policy unless either the St. Paul Policy or the First Excess Policy expressly state otherwise.

28.   The St. Paul Policy disclaims the "duty to defend" Imperial Sugar against any claim or suit, but does not expressly or impliedly exclude the separate and distinct duty to pay for Imperial Sugar's defense costs in the event of a covered claim.

29.   The First Excess Policy disclaims the obligation to "assume charge" of Imperial Sugar's defense of a covered claim.  However, the First Excess Policy does not expressly or impliedly exclude the separate and distinct duty to pay for Imperial Sugar's defense costs in the event of a covered claim.

30.   As a result, the duty arising from the Umbrella Policy to pay for Imperial Sugar's defense of a covered claim is expressly incorporated into and made a part of the St. Paul Policy, and thus qualifies as covered loss under the St. Paul Policy.

### *Exhaustion of Umbrella Policy and*
### *Anticipated Exhaustion of First Excess Policy*

31.   The Port Wentworth Litigation constitutes a covered claim under the Primary Policy, the Umbrella Policy, the First Excess Policy, the American Guarantee Policy and the St. Paul Policy.

32.   Pursuant to the terms and conditions of the Primary Policy and the Umbrella Policy, the Primary Insurer and the Umbrella Insurer accepted the defense of the Port Wentworth Litigation.

33.    The Primary Insurer and the Umbrella Insurer paid all defense costs they were obligated to pay on behalf of Imperial Sugar in connection with the Port Wentworth Litigation and, on or about February 21, 2011, the limits of liability provided under the Primary Policy and the Umbrella Policy were exhausted by virtue of covered settlement payments made by the Primary Insurer and the Umbrella Insurer on behalf of Imperial Sugar.

34.    Upon exhaustion of the Primary Policy and the Umbrella Policy, the First Excess Insurer became obligated to pay for Imperial Sugar's losses and defense costs associated with the Port Wentworth Litigation under the First Excess Policy.  Upon information and belief, the First Excess Policy will be exhausted, by virtue of covered settlement payments already agreed to by the First Excess Insurer on behalf of Imperial Sugar, in the near future.  Upon exhaustion of the First Excess Policy, the First Excess Insurer will no longer have an obligation to pay for Imperial Sugar's losses and defense costs in connection with the Port Wentworth Litigation.

### *Imperial Sugar's Umbrella and Excess Liability Coverage Specifications*

35.    In 2007, when Imperial Sugar sought to purchase umbrella and excess liability coverage from American Guarantee, St. Paul and other insurers, Imperial Sugar (through its authorized insurance broker) prepared detailed,

written coverage specifications for its umbrella and excess liability insurance program (the "Coverage Specifications").

36.    The Coverage Specifications were created and designed for the umbrella and excess liability coverage that Imperial Sugar sought to purchase for the policy period April 1, 2007 through April 1, 2008.

37.    The intent of the Coverage Specifications was to procure, from interested insurers, proposals for insurance that would adequately meet the needs of Imperial Sugar, as detailed in the Coverage Specifications.

38.    Imperial Sugar specifically required that its entire $100 million umbrella and excess liability program (including without limitation the $25 million in coverage sought from American Guarantee and the $25 million in coverage sought from St. Paul) must cover defense costs, and that defense costs must be covered in addition to the limits of liability.

39.    Consistent and uniform coverage of defense costs—without interruption through the entire umbrella and excess liability program—was a critical component of the coverage needed and requested by Imperial Sugar.

40.    Coverage for defense costs that would apply in addition to policy limits was a required term for any proposal submitted by American Guarantee, St. Paul and any other insurer.

41.    The Coverage Specifications expressly required that each proposal submitted by an interested insurer must either state that: (i) the proposal conforms exactly to the Coverage Specifications; or (ii) that the proposal deviates from the Coverage Specifications and, if so, state exactly how or to what extent the proposal so deviates.

42.    The Coverage Specifications further stated that if deviations were not specified in the proposals, any accepted proposal will be interpreted as granting coverage no less than requested in the Coverage Specifications and will be considered binding on the insurer.

43.    By virtue of these Coverage Specifications and other communications, Imperial Sugar explicitly conveyed to American Guarantee and St. Paul that coverage for defense costs, which would apply in addition to policy limits, was a required term of coverage.

### *Purchase of American Guarantee Policy*

44.    On or around March 7, 2007, in response to the Imperial Sugar's Coverage Specifications, American Guarantee submitted a proposal and quote for insurance to Imperial Sugar's broker.

45.     American Guarantee's proposal and quote did not advise Imperial Sugar or its broker that the coverage proposed in the quote deviated in any fashion from the Coverage Specifications.

46.     American Guarantee's proposal and quote for "follow form" coverage specifically noted that the Umbrella Policy included coverage for defense costs and that such coverage was in addition to the limit of liability of the Umbrella Policy.

47.     On or around March 14, 2007, in reliance on the Coverage Specifications (including but not limited to the clear instructions that any policy issued to Imperial Sugar must include coverage for defense costs in addition to policy limits), American Guarantee's proposal and quote in response thereto, and other communications regarding same, Imperial Sugar decided to purchase excess liability coverage from American Guarantee.

48.     On or around March 20, 2007, American Guarantee submitted a binder of insurance to Imperial Sugar's broker in response to the Coverage Specifications and Imperial Sugar's request for coverage.

49.     American Guarantee's binder of insurance did not advise Imperial Sugar or its broker that the coverage identified in the binder deviated in any fashion from the Coverage Specifications.

50.    On or around May 7, 2007, American Guarantee issued the American Guarantee Policy to Imperial Sugar.

51.    By virtue of the Coverage Specifications and other information and documents provided to American Guarantee, American Guarantee was on notice that Imperial Sugar required its primary and umbrella liability policies to include coverage for defense costs in addition to policy limits, and that Imperial Sugar further required that its entire excess liability insurance program likewise include such coverage.

52.    Prior to the issuance of the American Guarantee Policy, and when American Guarantee submitted its proposal, quote and binder for insurance to Imperial Sugar, American Guarantee affirmatively and/or impliedly represented that the policy it sought to sell to Imperial Sugar covered defense costs in addition to policy limits by, among other actions, issuing to Imperial Sugar a policy of insurance in response to Coverage Specifications that specifically required coverage for defense costs in addition to policy limits and failing to notify Imperial Sugar of any intent to exclude such coverage.

53.    American Guarantee had actual knowledge of the Coverage Specifications but never advised Imperial Sugar (or upon information and belief its broker) that the policy American Guarantee proposed, quoted, bound and

issued to Imperial Sugar allegedly did not provide any coverage for defense costs.

54.   Imperial Sugar has paid all premiums required by American Guarantee in connection with the American Guarantee Policy.

### *American Guarantee's Denial of Coverage*

55.   On or about December 11, 2009, American Guarantee took the position, for the first time, that the American Guarantee Policy excludes any obligation to pay for Imperial Sugar's defense costs in the Port Wentworth Litigation.

56.   Prior to December 11, 2009, American Guarantee did not issue any correspondence or other communication that reserved or purported to reserve any alleged right by American Guarantee to limit or deny defense costs coverage to Imperial Sugar in connection with the Port Wentworth Litigation.

57.   By denying coverage for Imperial Sugar's defense costs associated with the Port Wentworth Litigation when American Guarantee knows or should know that the American Guarantee Policy provides coverage for these defense costs, as well as by the other acts and omissions as herein described, American Guarantee has wrongfully attempted to force Imperial Sugar to forego the benefits of the American Guarantee Policy that Imperial Sugar bargained for and is rightly entitled to, and has otherwise wrongfully attempted to influence

and jeopardize Imperial Sugar's claims for coverage under the American Guarantee Policy.

## COUNTERCLAIMS AGAINST AMERICAN GUARANTEE

## COUNT 1:  ANTICIPATORY BREACH OF CONTRACT

58.    Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-57 of these Counterclaims as if fully stated herein.

59.    Pursuant to the express terms and conditions of the American Guarantee Policy, upon the exhaustion of the Primary Policy, the Umbrella Policy and the First Excess Policy, American Guarantee has a contractual obligation to pay all costs associated with Imperial Sugar's defense of the Port Wentworth Litigation.

60.    Pursuant to the express terms and conditions of the American Guarantee Policy, payments of covered defense costs do not reduce or "erode" the limit of liability provided by the American Guarantee Policy.

61.    American Guarantee has wrongfully and unlawfully communicated to Imperial Sugar that American Guarantee will not pay Imperial Sugar's defense costs in connection with the Port Wentworth Litigation.

62.    American Guarantee's actions constitute an absolute and wrongful repudiation of the coverage obligations owed to Imperial Sugar under the American Guarantee Policy.

63.    American Guarantee is without any just cause or excuse for its absolute repudiation of its obligation under the American Guarantee Policy to pay Imperial Sugar's defense costs related to the Port Wentworth Litigation.

64.    Imperial Sugar has suffered and will continue to suffer damages and harm as a result of American Guarantee's absolute repudiation of its obligations to Imperial Sugar under the American Guarantee Policy, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

65.    American Guarantee's actions constitute an anticipatory and material breach of the terms and conditions of the American Guarantee Policy.

66.    American Guarantee's failure to effectively reserve any alleged right to limit or deny defense costs coverage under the American Guarantee Policy has resulted in a waiver of any right to claim a lack of coverage.

67.    By virtue of American Guarantee's acts and omissions as described herein, and Imperial Sugar's justified and detrimental reliance on same (including, for example, Imperial Sugar's belief that the American Guarantee

Policy included coverage for defense costs and its consequential decision not to purchase this coverage from another insurer), American Guarantee is estopped from denying coverage for Imperial Sugar's defense costs.

68.    All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 2: BREACH OF CONTRACT

69.    Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-68 of these Counterclaims as if fully stated herein.

70.    Pursuant to the express terms and conditions of the American Guarantee Policy, upon the exhaustion of the Primary Policy, the Umbrella Policy and the First Excess Policy, American Guarantee has a contractual obligation to pay all costs associated with Imperial Sugar's defense of the Port Wentworth Litigation.

71.    Pursuant to the express terms and conditions of the American Guarantee Policy, payments of covered defense costs do not reduce or "erode" the limit of liability provided by the American Guarantee Policy.

72.    The Primary Policy, the Umbrella Policy, and the First Excess Policy have each been exhausted through payment of settlements and other losses.

73.    Therefore, American Guarantee is now liable to pay all losses covered by the American Guarantee Policy, including Imperial Sugar's defense costs associated with the Port Wentworth Litigation.

74.    American Guarantee has wrongfully and unlawfully refused to pay and communicated that it will refuse to pay Imperial Sugar's defense costs in connection with the Port Wentworth Litigation.

75.    American Guarantee's actions constitute a material breach of the American Guarantee Policy.

76.    American Guarantee is without any just cause or excuse for its material breach of the American Guarantee Policy.

77.    Imperial Sugar has suffered and will continue to suffer damages and harm as a result of American Guarantee's material breach of the American Guarantee Policy, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

78.    American Guarantee's failure to effectively reserve any alleged right to limit or deny defense costs coverage under the American Guarantee Policy has resulted in a waiver of any right to claim a lack of coverage.

79.    By virtue of American Guarantee's acts and omissions as described herein, and Imperial Sugar's justified and detrimental reliance on same

(including, for example, Imperial Sugar's belief that the American Guarantee Policy included coverage for defense costs and its consequential decision not to purchase this coverage from another insurer), American Guarantee is estopped from denying coverage for Imperial Sugar's defense costs.

80.    All conditions precedent for the relief prayed for in this count have been fulfilled.

### COUNT 3:  PROMISSORY ESTOPPEL

81.    Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-80 of these Counterclaims as if fully stated herein.

82.    By virtue of the Coverage Specifications and other information and documents provided to American Guarantee, American Guarantee was on notice that Imperial Sugar required that its primary and umbrella liability policies include coverage for defense costs in addition to policy limits, and that Imperial Sugar further required that its entire excess liability insurance program likewise include such coverage.

83.    Prior to the issuance of the American Guarantee Policy, and when American Guarantee submitted its proposal, quote and binder for insurance to Imperial Sugar, American Guarantee affirmatively and/or impliedly represented

that the policy that it sought to sell to Imperial Sugar covered defense costs in addition to policy limits.

84.   American Guarantee had actual knowledge of the Coverage Specifications but never advised Imperial Sugar (or upon information and belief its broker) that the policy American Guarantee proposed, quoted, bound and issued to Imperial Sugar allegedly did not provide any coverage for defense costs.

85.   Prior to and after the issuance of the American Guarantee Policy, Imperial Sugar reasonably and substantially relied on American Guarantee's promises to its detriment by, for example, foregoing purchasing other insurance coverage that covered the cost of a legal defense associated with any covered loss.

86.   American Guarantee knew, or reasonably should have known, that Imperial Sugar would rely on representations that Imperial Sugar's defense costs would be and were covered.

87.   Imperial Sugar relied on American Guarantee's promises to its detriment and injustice can be avoided only by enforcing American Guarantee's promises.

88.   All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 4:  REQUEST FOR DECLARATORY JUDGMENT

89.    Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-88 of these Counterclaims as if fully stated herein.

90.    Imperial Sugar requests relief pursuant to 28 U.S.C. §§ 2201-2202.

91.    A dispute exists between Imperial Sugar and American Guarantee concerning the parties' respective rights and obligations under the American Guarantee Policy.

92.    There exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

93.    The facts are sufficiently established such that an actual and live controversy exists between the parties and it is ripe for adjudication.

94.    The declarations by this Court, as prayed for below, will terminate the controversy and remove uncertainty as to the legal rights and obligations between the parties.

95.    Imperial Sugar respectfully submits that this Court should exercise its power, pursuant to 28 U.S.C. §§ 2201-2202, and issue an order declaring that American Guarantee is obligated to pay all of Imperial Sugar's defense costs incurred in the Port Wentworth Litigation upon exhaustion of the First Excess

Policy, and that payment of such defense costs shall not reduce or erode the limit of liability under the American Guarantee Policy.

96.    All conditions precedent for the relief prayed for in this count have been fulfilled.

### COUNT 5:  VIOLATIONS OF TEXAS INSURANCE CODE CHAPTER 541

97.    Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-96 of these Counterclaims as if fully stated herein.

98.    American Guarantee is an entity engaged in the business of insurance.

99.    Imperial Sugar is an insured under the American Guarantee Policy.

100.   Pursuant to the terms and conditions of the American Guarantee Policy, upon exhaustion of the Primary Policy, the Umbrella Policy and the First Excess Policy, American Guarantee is obligated to pay on behalf of Imperial Sugar sums that exceed the limits of liability provided by these policies, as well as to pay Imperial Sugar's defense costs and expenses incurred in connection with the defense of the Port Wentworth Litigation.

101.   Although American Guarantee's liability for defense costs under the American Guarantee Policy is and has been reasonably clear under applicable law, American Guarantee has wrongfully denied coverage.

102.   Imperial Sugar has paid all premiums required by American Guarantee in connection with the American Guarantee Policy.

103.   American Guarantee has committed multiple violations of Chapter 541 of the Texas Insurance Code, which are more particularly set forth below.

104.   As described herein, American Guarantee, in March of 2007 and on other occasions through its employees and other authorized representatives, made statements misrepresenting the terms, benefits and advantages of the insurance proposal, quote and binder submitted by American Guarantee and/or the American Guarantee Policy sold and delivered to Imperial Sugar by American Guarantee.

105.   Through a "reservation-of-rights letter" dated December 11, 2009, as well as through other action and communication from employees and authorized agents of American Guarantee, American Guarantee misrepresented that the American Guarantee Policy excludes coverage or otherwise does not provide coverage for defense costs incurred by Imperial Sugar after the Primary Policy, the Umbrella Policy and the First Excess Policy are exhausted, when in fact the American Guarantee Policy does cover such costs.

106.   American Guarantee refused and continues to refuse to provide defense costs coverage for the Port Wentworth Litigation upon exhaustion of the

Primary Policy, the Umbrella Policy and First Excess Policy, even though American Guarantee's liability has been and is reasonably clear under applicable law, and even though American Guarantee previously represented that such coverage would be and was provided under the American Guarantee Policy.   American Guarantee's representation of defense cost coverage includes, but is not limited to, proposing, binding and issuing the American Guarantee Policy to Imperial Sugar without noting any deviation from the Coverage Specifications that explicitly required coverage for defense costs in addition to policy limits, despite American Guarantee's knowledge of the Coverage Specifications and the requirement of defense costs coverage, and despite knowledge of a requirement that any deviations from the Coverage Specifications be explicitly noted in any offer of coverage.

107.   American Guarantee failed to promptly provide Imperial Sugar with a reasonable explanation of the basis in the American Guarantee Policy, in relation to the facts and applicable law, for the denial of Imperial Sugar's claim for defense costs in the Port Wentworth Litigation.

108.   American Guarantee failed to affirm or deny coverage for Imperial Sugar's claims for defense costs related to the Port Wentworth Litigation within a reasonable time.

109. American Guarantee failed to submit a reservation-of-rights letter to Imperial Sugar that advised of a purported lack of coverage for defense costs within a reasonable time in connection with the Port Wentworth Litigation.

110. American Guarantee, through its employees and other authorized representatives, misrepresented the proposal, quote, binder and/or American Guarantee Policy by making untrue statements of fact.

111. American Guarantee, through its employees and other authorized representatives, misrepresented the proposal, quote, binder and/or American Guarantee Policy by failing to state material facts necessary to make other statements made not misleading, considering the circumstances under which the statements were made.

112. American Guarantee, through its employees and other authorized representatives, misrepresented the proposal, quote, binder and/or American Guarantee Policy by making statements in a manner that would mislead a reasonably prudent person to a false conclusion of material fact.

113. American Guarantee, through its employees and other authorized representatives, misrepresented the proposal, quote, binder and/or American Guarantee Policy by making untrue statements of law, including without limitation by representing that the American Guarantee Policy did not include

coverage for defense costs associated with the Port Wentworth Litigation despite American Guarantee's knowledge that the American Guarantee Policy included defense cost coverage under applicable law.

114. American Guarantee, through its employees and other authorized representatives, misrepresented that facts exist, or may exist, which entitle American Guarantee to deny coverage in connection with the Port Wentworth Litigation based on an alleged lack of cooperation by Imperial, despite American Guarantee's knowledge that there was and has been no lack of cooperation on Imperial Sugar's part that would provide any basis for American Guarantee to deny coverage under the American Guarantee Policy.

115. American Guarantee, through its employees and other authorized representatives, misrepresented that facts exist, or may exist, which entitle American Guarantee to deny coverage in connection with the Port Wentworth Litigation based on alleged "inflated" settlement values that were negotiated, agreed to, and paid for by Imperial's underlying insurers, despite American Guarantee's knowledge that there were no such "inflated" settlement values that would provide any basis for American Guarantee to deny coverage under the American Guarantee Policy.

116.   American Guarantee, through its employees and other authorized representatives, misrepresented that facts exist, or may exist, which entitle American Guarantee to deny or limit coverage in connection with the Port Wentworth Litigation based on an alleged improper "allocation" of settlement amounts that were negotiated, agreed to, and paid for by Imperial's underlying insurers, despite American Guarantee's knowledge that there was no improper "allocation" and, further, that Imperial Sugar did not and could not control or direct any "allocation" of settlement amounts negotiated, agreed to, and paid for by Imperial's underlying insurers.

117.   American Guarantee acted in bad faith and failed to cooperate in settling claims against the Imperial Defendants by raising baseless allegations that previous settlement payments made by underlying insurers were improperly "allocated."

118.   The "allocation" arguments raised by American Guarantee were an attempt to wrongfully evade its payment obligations under the American Guarantee Policy.

119.   American Guarantee's unfair and deceptive acts in violation of the Texas Insurance Code (including but not limited to the above-described misrepresentations and denials of coverage concerning the American Guarantee

Policy) are the producing and proximate cause of Imperial Sugar's actual damages, expenses and other losses, which are continuing in nature.

120.   Accordingly, Imperial Sugar is entitled to recover its damages, court costs and reasonable and necessary attorneys' fees.

121.   In addition, American Guarantee's acts and omissions, as described herein, occurred knowingly because they were made with an actual awareness of their falsity, unfairness and/or deceptive nature.  As such, Imperial Sugar is also entitled to recover three times its actual damages.

122.   Imperial Sugar has provided written notice of the above-described claims under Chapter 541 of the Texas Insurance Code to American Guarantee.

123.   All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 6:  COMMON LAW BAD FAITH

124.   Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-123 of these Counterclaims as if fully stated herein.

125.   Imperial Sugar and American Guarantee are parties to the American Guarantee Policy whereby American Guarantee agreed to insure Imperial Sugar and other insureds against excess liability claims that exceed the limits of

liability provided by the Primary Policy, the Umbrella Policy and the First Excess Policy.

126.   As the insurer under the American Guarantee Policy, American Guarantee owes Imperial Sugar a duty of good faith and fair dealing.

127.   American Guarantee has breached this duty by refusing to pay for and by denying coverage for defense costs associated with covered claims, when it is reasonably clear under applicable law that such defense costs are covered under the American Guarantee Policy.

128.   The American Guarantee Policy follows the form of the Umbrella Policy, which expressly covers defense costs.

129.   The American Guarantee Policy does not expressly or impliedly negate or exclude American Guarantee's separate and distinct duty to pay for Imperial Sugar's defense costs in the event of a covered claim.

130.   American Guarantee knew or by the exercise of reasonable diligence should have known that its liability for defense costs was reasonably clear under the American Guarantee Policy and under applicable law.

131.   By denying coverage for Imperial Sugar's defense costs associated with the Port Wentworth Litigation when American Guarantee knows or should know that the American Guarantee Policy provides coverage for these defense

costs, as well as by the other acts and omissions as described herein, American Guarantee has also breached its duty of good faith and fair dealing by wrongfully attempting to force Imperial Sugar to waive the benefits of the American Guarantee Policy that Imperial Sugar bargained for and is rightly entitled to, and otherwise wrongfully attempting to influence and jeopardize Imperial Sugar's claims for coverage under the American Guarantee Policy.

132.   American Guarantee knew or should have known that it had no basis in law or in fact upon which a reasonable insurer would have relied upon in engaging in the foregoing conduct.

133.   American Guarantee acted in bad faith and failed to cooperate in settling claims against the Imperial Defendants by raising baseless allegations that previous settlement payments made by underlying insurers were improperly "allocated."

134.   The "allocation" arguments raised by American Guarantee were an attempt to wrongfully evade its payment obligations under the American Guarantee Policy.

135.   The above breaches have proximately caused Imperial Sugar to lose the benefits and protections it is rightfully entitled to under the American Guarantee Policy, and to suffer damages, expenses and other losses which are continuing

in nature, including but not limited to defense costs associated with the continued defense of the Port Wentworth Litigation.

136.   American Guarantee's acts and omissions as described above constitute an independent tort against Imperial Sugar.

137.   American Guarantee's acts and omissions as described above amount to common law fraud.

138.   American Guarantee's acts and omissions as described above were malicious in that they were intended to cause Imperial Sugar substantial harm, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

139.   American Guarantee's acts and omissions as described above were grossly negligent because they involved an extreme risk of harm to Imperial Sugar of which American Guarantee was aware, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

140.   American Guarantee was aware of a high probability that its actions would result in extraordinary harm to Imperial Sugar, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

141.  American Guarantee acted with conscious indifference to Imperial Sugar's rights, by, among other actions, denying Imperial Sugar benefits it was entitled to receive pursuant to the American Guarantee Policy, including but not limited to coverage for defense costs associated with the continued defense of the Port Wentworth Litigation. American Guarantee knew or reasonably should have known that Imperial Sugar was entitled to these benefits under the American Guarantee Policy.

142.  As a result of American Guarantee's acts and omissions described above, Imperial Sugar is entitled to recover exemplary or enhanced damages, as allowed by law and determined by the trier of fact.

143.  All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 7: COMMON LAW FRAUD AND FRAUD BY CONCEALMENT AND NON-DISCLOSURE

144.  Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-143 of this Crossclaim as if fully stated herein.

145.  Assuming *arguendo* and for purposes of this Count only that the American Guarantee Policy does not grant coverage or excludes or limits

coverage for defense costs, American Guarantee concealed and/or failed to disclose these facts to Imperial Sugar.

146.  American Guarantee had a duty to disclose that the American Guarantee Policy would not and does not provide coverage for defense costs, or would provide and provides only limited coverage for defense costs that reduces or "erodes" policy limits, because: (i) American Guarantee created a false impression by submitting the proposal, quote and binder and issuing the American Guarantee Policy after Imperial Sugar explicitly communicated to American Guarantee that it required coverage for defense costs in addition to policy limits; and (ii) American Guarantee voluntarily disclosed some information in connection with the proposal, quote, binder and issuance of the American Guarantee Policy, and therefore had a duty to disclose the whole truth—i.e., that the American Guarantee Policy would not and does not provide any defense costs coverage, or provides only limited coverage for defense costs that reduces or "erodes" policy limits.

147.  If the American Guarantee Policy does not provide any coverage for defense costs, or provides only limited coverage for defense costs that reduces or "erodes" policy limits, these facts were material.

148.   The American Guarantee Policy has no explicit language excluding or limiting coverage for defense costs that would serve to alert Imperial Sugar of such facts.

149.   Imperial Sugar explicitly required defense costs coverage in addition to policy limits as a prerequisite for any policy submission, and moved forward with purchasing the American Guarantee Policy in reasonable reliance upon American Guarantee's assurances of coverage.

150.   American Guarantee knew that Imperial Sugar was unaware of the lack of coverage or limited coverage, and knew that Imperial Sugar did not have an equal opportunity to discover these facts.

151.   American Guarantee had a duty to correct the misconceptions it created, but instead remained silent, intending to induce Imperial Sugar into purchasing the American Guarantee Policy for its own financial gain.

152.   Imperial Sugar reasonably relied upon American Guarantee's concealment and non-disclosure by purchasing a policy that it reasonably believed covered defense costs in addition to policy limits.

153.   Imperial Sugar was injured as a result of acting without knowledge of the foregoing concealed and undisclosed facts.

154.   Through the above-described actions, American Guarantee intended to deceive Imperial Sugar into believing that the American Guarantee Policy included coverage for defense costs even though American Guarantee now alleges the American Guarantee Policy does not provide such coverage.

155.   American Guarantee intended to deceive Imperial Sugar concerning the benefits provided by the American Guarantee Policy to induce Imperial Sugar into purchasing the American Guarantee Policy and to receive the financial gain associated with Imperial Sugar's purchase of the American Guarantee Policy.

156.   American Guarantee's deception concerning the benefits provided by the American Guarantee Policy (i.e., that the American Guarantee Policy included coverage for the insured's defense costs and that payment of such defense costs would not erode policy limits) did in fact cause Imperial Sugar to purchase the American Guarantee Policy and pay the associated premium to American Guarantee.

157.   American Guarantee's concealment and non-disclosure proximately caused Imperial Sugar to purchase an inferior and inadequate policy, to lose the benefits and protections it is or should be rightfully entitled to under the American Guarantee Policy, and to suffer damages, expenses and other losses which are continuing in nature.

158.   American Guarantee's acts and omissions, as described herein, were malicious in that they were intended to cause Imperial Sugar substantial harm.

159.   American Guarantee's acts and omissions as described herein were grossly negligent because they involved an extreme risk of harm to Imperial Sugar of which American Guarantee was aware, including but not limited to defense costs associated with the continued defense of the Port Wentworth Litigation.

160.   American Guarantee was aware of a high probability that its actions would result in extraordinary harm to Imperial Sugar.

161.   American Guarantee acted with conscious indifference to Imperial Sugar's rights.

162.   American Guarantee's acts and omissions, as described herein, constitute an independent tort against Imperial Sugar.

163.   American Guarantee's acts and omissions, as described herein, amount to common law fraud.

164.   American Guarantee's acts and omissions, as described herein, amount to fraud by concealment and non-disclosure.

165.  As a result of American Guarantee's acts and omissions, as described above, Imperial Sugar is entitled to recover exemplary or enhanced damages, as allowed by law and determined by the trier of fact.

166.  All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 8:  NEGLIGENT MISREPRESENTATION

167.  Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-166 of these Counterclaims as if fully stated herein.

168.  Assuming *arguendo* and for purposes of this count only that the American Guarantee Policy does not grant coverage or excludes or limits coverage for defense costs, American Guarantee misrepresented material terms of coverage by proposing, quoting, binding and issuing the American Guarantee Policy in response to the Coverage Specifications, which among other things, specifically requested coverage for defense costs that would not erode policy limits.

169.  American Guarantee made these misrepresentations in the course of American Guarantee's business and in the course of a transaction in which American Guarantee had an interest.

170.  By virtue of American Guarantee proposing, quoting, binding and issuing the American Guarantee Policy in response to the Coverage Specifications,

Imperial Sugar was necessarily guided by false and misleading information provided by American Guarantee.

171. By submitting the non-conforming proposal, quote, binder and policy, American Guarantee failed to exercise reasonable care and/or competence in communicating the scope of coverage that was proposed and provided to Imperial Sugar.

172. Imperial Sugar justifiably relied on American Guarantee's negligent misrepresentations prior to and after the issuance of the American Guarantee Policy.

173. Imperial Sugar would not have purchased the American Guarantee Policy absent American Guarantee's negligent misrepresentations.

174. American Guarantee's negligent misrepresentations proximately caused Imperial Sugar to purchase an inferior and inadequate policy, to lose the benefits and protections it is or should be rightfully entitled to under the American Guarantee Policy, and to suffer damages, expenses and other losses which are continuing in nature.

175. Such damages include but are not limited to defense costs associated with the continued defense of the Port Wentworth Litigation.

176.   American Guarantee's acts and omissions as described herein were grossly negligent because they involved an extreme risk of harm to Imperial Sugar of which American Guarantee was aware.

177.   American Guarantee was aware of a high probability that its actions would result in extraordinary harm to Imperial Sugar.

178.   American Guarantee acted with conscious indifference to Imperial Sugar's rights.

179.   As a result of American Guarantee's acts and omissions as described herein, Imperial Sugar is entitled to recover exemplary or enhanced damages, as allowed by law and determined by the trier of fact.

180.   All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 9:  ANTICIPATORY BREACH OF IMPLIED CONTRACT

181.   Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-180 of these Counterclaims as if fully stated herein.

182.   Assuming *arguendo* and for purposes of this Count only that the American Guarantee Policy does not grant coverage or excludes or limits coverage for defense costs, Imperial Sugar and American Guarantee, by virtue of the Coverage Specifications and American Guarantee's acts and omissions as

described herein in response to the Coverage Specifications, entered into an implied-in-fact contract whereby American Guarantee agreed to provide defense costs coverage to Imperial Sugar in connection with claims that trigger or may trigger American Guarantee's duty to indemnify Imperial Sugar under the American Guarantee Policy.

183.   Pursuant to the terms and conditions of the implied-in-fact contract, upon the exhaustion of the Primary Policy, the Umbrella Policy and the First Excess Policy, American Guarantee has a contractual obligation to pay all costs associated with Imperial Sugar's defense of the Port Wentworth Litigation.

184.   Pursuant to the terms and conditions of the implied-in-fact contract, payments of covered defense costs do not reduce or "erode" the limit of liability provided by the American Guarantee Policy.

185.   American Guarantee has wrongfully and unlawfully communicated to Imperial Sugar that American Guarantee will not pay Imperial Sugar's defense costs in connection with the Port Wentworth Litigation.

186.   American Guarantee's actions constitute an absolute and wrongful repudiation of the coverage obligations owed to Imperial Sugar under the implied-in-fact contract.

187.   American Guarantee is without any just cause or excuse for its absolute repudiation of its obligation under the implied-in-fact contract to pay Imperial Sugar's defense costs related to the Port Wentworth Litigation.

188.   Imperial Sugar has suffered and will continue to suffer damages and harm as a result of American Guarantee's absolute repudiation of its obligations to Imperial Sugar under the implied-in-fact contract, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

189.   American Guarantee's actions constitute an anticipatory and material breach of the terms and conditions of the implied-in-fact contract.

190.   American Guarantee's failure to effectively reserve any alleged right to limit or deny defense costs coverage under the implied-in-fact contract has resulted in a waiver of any right to claim a lack of coverage.

191.   By virtue of American Guarantee's acts and omissions as described herein, and Imperial Sugar's justified and detrimental reliance on same, American Guarantee is estopped from denying coverage for Imperial Sugar's defense costs.

192.   All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 10:  BREACH OF IMPLIED CONTRACT

193.  Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-192 of these Counterclaims as if fully stated herein.

194.  Assuming *arguendo* and for purposes of this Count only that the American Guarantee Policy does not grant coverage or excludes or limits coverage for defense costs, Imperial Sugar and American Guarantee, by virtue of the Coverage Specifications and American Guarantee's acts and omissions as described herein in response to the Coverage Specifications, entered into an implied-in-fact contract whereby American Guarantee agreed to provide defense costs coverage to Imperial Sugar in connection with claims that trigger or may trigger American Guarantee's duty to indemnify Imperial Sugar under the American Guarantee Policy.

195.  Pursuant to the terms and conditions of the implied-in-fact contract, upon the exhaustion of the Primary Policy, the Umbrella Policy and the First Excess Policy, American Guarantee has a contractual obligation to pay all costs associated with Imperial Sugar's defense of the Port Wentworth Litigation.

196.  Pursuant to the terms and conditions of the implied-in-fact contract, payments of covered defense costs do not reduce or "erode" the limit of liability provided by the American Guarantee Policy.

197.   American Guarantee has wrongfully and unlawfully refused to pay and communicated to Imperial Sugar that American Guarantee will not pay Imperial Sugar's defense costs in connection with the Port Wentworth Litigation.

198.   American Guarantee's actions constitute a material breach of the coverage obligations owed to Imperial Sugar under the implied-in-fact contract.

199.   American Guarantee is without any just cause or excuse for its material breach of the implied-in-fact contract to pay Imperial Sugar's defense costs related to the Port Wentworth Litigation.

200.   Imperial Sugar has suffered and will continue to suffer damages and harm as a result of American Guarantee's material breach of its obligations to Imperial Sugar under the implied-in-fact contract, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

201.   American Guarantee's failure to effectively reserve any alleged right to limit or deny defense costs coverage under the implied-in-fact contract has resulted in a waiver of any right to claim a lack of coverage.

202.   By virtue of American Guarantee's acts and omissions as described herein, and Imperial Sugar's justified and detrimental reliance on same,

American Guarantee is estopped from denying coverage for Imperial Sugar's defense costs.

203.   All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 11: FRAUDULENT INDUCEMENT

204.   Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-203 of these Counterclaims as if fully stated herein.

205.   Assuming *arguendo* and for purposes of this Count only that the American Guarantee Policy does not grant coverage or excludes or limits coverage for defense costs, American Guarantee knowingly and/or recklessly misrepresented that the American Guarantee Policy would cover and covered defense costs in addition to policy limits by submitting the proposal, quote and binder, and issuing the American Guarantee Policy in response to Imperial Sugar's Coverage Specifications.   The representations that the American Guarantee Policy would cover and covered defense costs in addition to policy limits were material and false.

206.   American Guarantee intended for Imperial Sugar to purchase the American Guarantee Policy in reliance on American Guarantee's false representations of coverage.

207.   American Guarantee's fraudulent representations induced Imperial Sugar to purchase the American Guarantee Policy.

208.   Imperial Sugar reasonably relied on these fraudulent representations to its detriment by purchasing the American Guarantee Policy.

209.   American Guarantee's fraudulent representations have proximately caused Imperial Sugar to purchase an inferior and inadequate policy, to lose the benefits and protections it is or should be rightfully entitled to under the American Guarantee Policy, and to suffer damages, expenses, and other losses which are continuing in nature.

210.   American Guarantee's acts and omissions as described herein constitute an independent tort against Imperial Sugar.

211.   American Guarantee's acts and omissions as described herein amount to common law fraud.

212.   American Guarantee's acts and omissions as described herein were malicious in that they were intended to cause Imperial Sugar substantial harm, including but not limited to incurring defense costs associated with the continued defense of the Port Wentworth Litigation.

213.   American Guarantee's acts and omissions as described herein were grossly negligent because they involved an extreme risk of harm to Imperial Sugar of which American Guarantee was aware.

214.   American Guarantee was aware of a high probability that its actions would result in extraordinary harm to Imperial Sugar.

215.   American Guarantee acted with conscious indifference to Imperial Sugar's rights.

216.   As a result of American Guarantee's acts and omissions as described above Imperial Sugar is entitled to recover exemplary or enhanced damages, as allowed by law and determined by the trier of fact.

217.   All conditions precedent for the relief prayed for in this count have been fulfilled.

## COUNT 12: ATTORNEYS' FEES AND COSTS

218.   Imperial Sugar restates and re-alleges the allegations contained in paragraphs 1-217 of these Counterclaims as if fully stated herein.

219.   Imperial Sugar necessarily has retained counsel to represent it in this action and has agreed to pay its counsel's reasonable and necessary attorneys' fees and costs.

220.   Imperial Sugar is entitled to recover its reasonable and necessary attorneys' fees and costs from American Guarantee under Texas Civil Practice & Remedies Code Chapter 38 because this is a suit for breach of a written contract.

221.   Imperial Sugar is entitled to recover its reasonable and necessary attorneys' fees plus court costs from American Guarantee under Texas Insurance Code § 541.152.

222.   Imperial Sugar is entitled to recover its attorneys' fees, costs, and other expenses of litigation from American Guarantee pursuant to O.C.G.A. § 13-6-11 because American Guarantee has acted in bad faith, been stubbornly litigious, and caused Imperial Sugar unnecessary trouble and expense in its denial of Imperial Sugar's defense cost coverage under the American Guarantee Policy.

### DEMAND FOR JURY TRIAL

223.   The Imperial Defendants demand a jury trial on all issues so triable.

   **WHEREFORE**, the Imperial Defendants pray:

(a)   that the Court dismiss American Guarantee's Complaint with prejudice;

(b)    that the Court enter judgment in favor of Imperial Sugar on its Counterclaims against American Guarantee;

(c)    that the Court declare the rights and obligations of the parties, including a declaratory ruling that American Guarantee is obligated to pay all of Imperial Sugar's defense costs in the Port Wentworth Litigation upon exhaustion of the First Excess Policy, and that payment of such defense costs shall not reduce or erode the limit of liability under the American Guarantee Policy;

(d)    that the Court enter judgment and order American Guarantee to pay Imperial Sugar all damages and other losses resulting from American Guarantee's anticipatory breach of the American Guarantee Policy and/or anticipatory breach of the parties' implied-in-fact contact;

(e)    that the Court enter judgment and order American Guarantee to pay Imperial Sugar all damages and other losses resulting from American Guarantee's breach of the American Guarantee Policy and/or breach of the parties' implied-in-fact contact;

(f)    that the Court enter judgment and order American Guarantee to pay Imperial Sugar an award of reasonable attorneys' fees and costs incurred by Imperial Sugar as a result of American Guarantee's anticipatory breach of contract;

(g)     that the Court enter judgment and order American Guarantee to pay Imperial Sugar an award of reasonable attorneys' fees and costs incurred by Imperial Sugar as a result of American Guarantee's breach of contract;

(h)     that the Court enter judgment and order American Guarantee to pay Imperial Sugar three times its actual damages, plus all court costs, attorneys' fees and other losses resulting from American Guarantee's knowing violations of the Texas Insurance Code;

(i)     that the Court, pursuant to O.C.G.A. § 13-6-11, enter judgment and order American Guarantee to pay Imperial Sugar an award of reasonable attorneys' fees and costs incurred by Imperial Sugar in pursuing and/or defending this action because American Guarantee has acted in bad faith, been stubbornly litigious, and caused Imperial Sugar unnecessary trouble and expense in its denial of Imperial Sugar's defense cost coverage under the American Guarantee Policy;

(j)     that the Court enter judgment and order American Guarantee to pay Imperial Sugar an award of exemplary or enhanced damages, as allowed by law and determined by the trier of fact;

(k)     that the Court enter judgment and order American Guarantee to pay Imperial Sugar pre- and post-judgment interest as allowed by law; and

(l)     that the Court award such other and further relief as may be appropriate

in law or equity.


Respectfully submitted this 23rd day of December, 2011.

/s/ Kevin M. Pitre
Gerald L. Mize, Jr.
Attorney-in-Charge
Georgia State Bar No. 514316
Stephen L. Bracy
Georgia State Bar No. 074215
E. Helen Eisenstein
Georgia State Bar No. 097206
Kevin M. Pitre
Georgia State Bar No. 921300
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

*Attorneys for Imperial Defendants*

OF COUNSEL:

ALSTON & BIRD, LLP
Chase Tower, suite 3601
220 Ross Avenue
Dallas, TX 75201

Darren L. McCarty
Texas Bar No. 24007631
Nathan W. Shackelford
Texas Bar No. 24070598

*\*Pro Hac Vice Applications Forthcoming*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

AMERICAN GUARANTEE       :
LIABILITY INSURANCE COMPANY   :
                                  :
        Plaintiff,               :
                                  :
v.                                  :   Civil Action No. 1:11-cv-02778-
                                  :   WSD
IMPERIAL SUGAR COMPANY, et al.,  :
                                  :
        Defendants.           :
_____ :

ST. PAUL FIRE AND MARINE     :
INSURANCE COMPANY,          :
                                  :
  Defendant/Cross-Claimant,    :
                                  :
v.                                  :
                                  :
IMPERIAL SUGAR COMPANY, et al,   :
                                  :
  Cross-Claim Defendants.     :
_____ :

## <u>CERTIFICATE OF COMPLIANCE</u>

    I hereby certify that the foregoing **IMPERIAL DEFENDANTS'
ANSWER AND AFFIRMATIVE DEFENSES TO AMERICAN
GUARANTEE & LIABILITY COMPANY'S COMPLAINT FOR
ACCOUNTING AND DELCARATORY JUDGMENT AND IMPERIAL**

- 66 -

**SUGAR'S COMPANY'S COUNTERCLAIMS AGAINST AMERICAN GUARANTEE & LIABILITY COMPANY** was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

This 23rd day of December, 2011.

/s/ Kevin M. Pitre
Gerald L. Mize, Jr.
Georgia Bar No. 514316
Stephen L. Bracy
Georgia Bar No. 074215
E. Helen Eisenstein
Georgia Bar No. 097206
Kevin M. Pitre
Georgia Bar No. 921300
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

*Attorneys for Imperial Defendants*

OF COUNSEL:

ALSTON & BIRD LLP
Chase Tower, Suite 3601
2200 Ross Avenue
Dallas, TX 75201

Darren L. McCarty*
Texas Bar No. 24007631
Nathan W. Shackelford*
Texas Bar No. 24070598

*Pro Hac Vice Applications Forthcoming*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 1:11-cv-02778-WSD |
| IMPERIAL SUGAR COMPANY, et al., | : | |
| Defendants. | : | |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | : | |
| Defendant/Cross-Claimant, | : | |
| v. | : | |
| IMPERIAL SUGAR COMPANY, et al, | : | |
| Cross-Claim Defendants. | : | |

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that on this 23rd of December, 2011, I caused a true and complete copy of **IMPERIAL DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO AMERICAN GUARANTEE & LIABILITY COMPANY'S COMPLAINT FOR ACCOUNTING AND**

**DELCARATORY JUDGMENT AND IMPERIAL SUGAR'S COMPANY'S COUNTERCLAIMS AGAINST AMERICAN GUARANTEE & LIABILITY COMPANY** to be served on the following counsel by the District Electronic Case Filing System (ECF):

J. Randolph Evans
McKenna, Long & Aldridge, LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265

J. Stephen Berry
McKenna Long & Aldridge, LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308-3265

Linda B. Foster
Weisman, Nowack, Curry & Wilco, P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, GA 30326

Seth M. Friedman
Weisman, Nowack, Curry & Wilco, P.C.
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, GA 30326

/s/ Kevin M. Pitre
Kevin M. Pitre
Georgia Bar No. 921300
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

*Attorney for Imperial Defendants*